UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 3:17-CR-170-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| TONIKA THOMPSON, | ) | **ORDER GRANTING MOTION FOR** |
| | ) | **COMPASSIONATE RELEASE** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on multiple *pro se* Motions (and supplements) for
Compassionate Release filed by Defendant Tonika Thompson. [R. 523; R. 533; R. 539; R. 583
(collectively the "Motion" or "Motions")]. She also requests that the Court appoint counsel to
represent her. [R. 525][1] The United States filed numerous responses and supplements opposing
Defendant's Motion premised on her own health concerns but taking no position on the more
recent grounds based on family circumstances. [R. 537; R. 576; R. 577; R. 588; R. 594]
Defendant filed several replies and additional supplements. [R. 549; R. 562; R. 569; R. 570; R.
579; R. 580; R. 582; R. 584; R. 585; R. 586; R. 590][2] For the reasons stated herein, Defendant's
Motion is **GRANTED** based on the unique family circumstances presented in this case.

## I.   Background

On November 14, 2018 a superseding indictment charged Defendant with conspiring
with others to possess with intent to distribute fifty grams or more of methamphetamine. [R. 148]

---

[1] Since the Court is granting Defendant's requested relief, her motion to appoint counsel will be denied as moot.
[2] The Court ordered both parties to file various supplements to the record [R. 550; R. 592], and the Court has
reviewed each of them and taken all information into consideration, along with various letters of support and other
filings. *See e.g.* [R. 539 (medical records of Defendant); R. 540 (Letter from Defendant's mother)]

On November 18, 2019, Defendant Thompson ultimately pleaded guilty pursuant to a superseding information to misprision of a felony, and the original conspiracy charge was dismissed. [R. 406 (Judgment and Commitment Order)] On February 20, 2020, Thompson was sentenced to 27 months imprisonment, the bottom of her applicable Guideline range, to be followed by one year of supervised release. *Id.* Collectively, her Motions for compassionate release are the fourth effort by Defendant post-sentencing to modify or reduce her sentence (all in a little more than a year from her original hearing).[3] On July 9, 2020, she filed a motion to modify her sentence, requesting home confinement and/or compassionate release. [R. 485] The United Stated responded in opposition [R. 502], and the Court denied the motion. [R. 506]

Defendant is currently serving her sentence at FPC Alderson in West Virginia. [R. 537, n. 3]; *Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 7, 2021). Her scheduled release date is March 2, 2022, and she is eligible for home detention on November 14, 2021 according to the United States. *Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/; [R. 594, p. 1] On November 23, 2020, Thompson filed the first in a succession of motions requesting reconsideration of her previous request for compassionate release based on her own alleged health problems and later providing new grounds for her requested release based on a series of tragic family circumstances. Defendant moves for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), known as a "compassionate release," in light of the COVID-19 pandemic. [R. 31]

## II.  Legal Standard

---

[3] First, on February 28, 2020, she filed a motion asking the Court to reconsider her sentence of twenty-seven months incarceration. [R. 422] The Court denied that motion on April 16, 2020. [R. 451] On April 15, 2020, Defendant filed a motion for emergency release, but on May 15, 2020 acknowledged the Court's previous denial of release mooted her emergency motion, and Magistrate Judge Colin Lindsay denied the motion. [R. 466, R. 470]

The compassionate-release statute allows the Court to reduce the term of imprisonment and impose a term of probation or supervised release under certain narrow circumstances. Section 3582(c) provides that:

> The court **may not** modify a term of imprisonment once it has been imposed **except that**—
>
> (1) In any case—
>
>> (A) **the court**, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, **may reduce the term of imprisonment** (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), **after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—**
>>
>>> (i) **extraordinary and compelling reasons warrant such a reduction . . .**
>>>
>>> **and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.**

18 U.S.C. § 3582(c)(1)(A) (emphasis added). Prior to the First Step Act of 2018 (FSA), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), only the director of the Bureau of Prisons (BOP) could move for a sentence reduction under section 3582(c). 18 U.S.C. § 3582(c)(1)(A) (2017); *United States v. Jones,* 980 F.3d 1098, 1104 (6th Cir. 2020). However, under the FSA, courts may now consider motions by defendants so long as the defendant satisfied the statute's exhaustion requirement—that is, "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Exhaustion by one of the two means listed is a "mandatory condition" to the Court granting compassionate release. *United States v. Alam*, 960

- 3 -

F.3d 831, 833−35 (6th Cir. 2020). If the government "properly invoke[s]" the condition, the Court must enforce it. *Id.* at 834.

Upon satisfying the exhaustion requirement (or upon waiver by the government of this requirement), the statute requires the Court to undertake a three-step test in reviewing compassionate-release motions. *Jones*, 980 F.3d at 1107–08. At step one, the Court must "find" whether "extraordinary and compelling reasons" warrant a sentence reduction. *Id.*; 18 U.S.C. § 3582(c)(1)(A)(i). At step two, the Court must "find" whether a reduction in the sentence is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at 1108; 18 U.S.C. § 3582(c)(1)(A)(i). At step three, the Court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)). In reference to step two, the Sentencing Commission in 2006 issued its policy statement in § 1B1.13 of the United States Sentencing Guidelines and the application notes to that section. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 (2006). However, because this policy statement has not been updated since passage of the First Step Act in December 2018, the Sixth Circuit recently held that § 1B1.13 is inapplicable to compassionate-release motions filed by the prisoner (as opposed to motions filed by the Director of the Bureau of Prisons). *Jones*, 980 F.3d at 1109–11; *see also United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). Consequently, in cases like this one, where the defendant files a motion for compassionate release, "federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111. Further, "district courts may deny compassionate-release motions when any of the three prerequisites listed in

- 4 -

§ 3582(c)(1)(A) is lacking and do not need to address the others." *Elias*, 984 F.3d at 519. Of course, when granting a compassionate-release motion, the district court must address all three steps in its analysis. *Id.* The defendant bears the burden of establishing a sentence reduction is warranted. *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

With these standards in mind, the Court will now turn to the substance of Defendant's Motion.

### III.   Discussion

#### A.   Extraordinary and Compelling Reasons

As an initial matter, the Court will first address whether Defendant has satisfied the administrative exhaustion requirement. *Alam*, 960 F.3d at 833−35. The United States does not contest that Defendant has administratively exhausted her claim with the BOP. [R.537, p. 3] The Motion is properly before the Court. *Alam*, 960 F.3d at 833−35.

The Court next considers whether the Defendant meets the substantive requirements for compassionate release as outlined by the Sixth Circuit in *Jones*. At step one, the Court must find that "extraordinary and compelling reasons" warrant a sentence reduction. § 3582(c)(1)(A)(i); *Jones*, 980 F.3d at 1107–08. The statute does not define "extraordinary and compelling" and, as mentioned above, the *Jones* Court recently held that the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13 is inapplicable. *Jones*, 980 F.3d at 1111. Consequently, until the Sentencing Commission updates § 1B1.13 post–First Step Act, "district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* at 1110.

Post-*Jones*, this Court has focused primarily on an inmate's health vulnerabilities to COVID-19 along with the particular BOP facility's ability to contain the virus in determining

whether extraordinary and compelling reasons exist for compassionate release based on the defendant's own medical needs. *See United States v. Sallee*, No. 6:18-cr-27 (E.D. Ky. Feb. 11, 2021), ECF No. 61; *see also Elias*, 984 F.3d at 520 (affirming a district court's use of a similar two-part test in determining whether extraordinary and compelling reasons justify compassionate release). However, courts have also granted compassionate release based on "family circumstances" *See United States v. Griffin*, No. 1:95-cr-00751-UU-1, 2020 WL 7295765 (S.D. Fla. Dec. 8, 2020); *United States v. Quinones Rodriguez*, No. 5:13-cr-30, 2020 WL 5045203 (W.D. Va. Aug. 26, 2020); *United States v. Hansen*, No. 17-cr-50062, 2020 WL 2219068 (N.D. Ill. May 7, 2020); *United States v. Walker*, No. 1:11-cr-270, 2019 WL 5268752 (N.D. Ohio Oct. 17, 2019)*.

    Initially, Defendant's request centered primarily on her own health issues and other extraneous matters. [R. 523] The Court agrees with the United States that none of her requested grounds rise to the level of "extraordinary and compelling" other than potentially her family circumstances. Though it appears Ms. Thompson has some health issues of her own, her concerns are largely inflated and certainly do not rise to the level of extraordinary or compelling.

    Defendant's more recent requests focus primarily on her 67-year-old mother's deteriorating health. Her mother, Patricia Thompson, serves as the primary caregiver to Defendant's minor children and Defendant's infant grandchild. [R. 549] In late December 2020, Thompson's mother provided a letter in support of Thompson's requested relief in which she advises that Defendant's three minor children all "have certain disabilities that sometime require all around the clock full time care and supervision." [R. 540] Defendant likewise advises that all three of her children have health and developmental challenges. [R. 549-9] In her letter, Patricia Thompson further advised that she has a "few health conditions of her own" which are getting

worse, and that she "need[s] [Defendant] home to care for her children." *Id.* She advises that she has a safe, drug-free, weapon-free home with an extra bedroom for Ms. Thompson to reside in and quarantine upon release and that she will ensure Ms. Thompson complies with any orders of the Court and United States Probation Office. *Id.* Defendant also informed the Court of two recent deaths in the family that have exacerbated the impact of Defendant's incarceration on her mother and children. These events include the death of Defendant's 13-year-old daughter in January 2021 [R. 554; R. 569],[4] and the death of her husband in April 2021. [R. 582; R. 584-1 (Emergency Message to Inmate) (advising Defendant of the death of her husband)]

On January 19, 2021, the Court entered an order requesting that Defendant or her mother file relevant medical records *under seal* substantiating the claimed health issues related to her mother (and any other relevant parties), and further ordered that the United States thereafter file a sur-reply addressing the merits of Defendant's arguments for release based on "family circumstances." [R. 505] Defendant requested additional time to provide such medical records related to her mother's health [R. 562], and the Court granted the request. [R. 563] On February 9, 2021 Defendant filed a Supplement advising that her mother is still awaiting results from the various appointments with medical specialists, but is believed to potentially be suffering from one or more significant gastrointestinal issues. [R. 569] She advised that her mother is in the process of gathering additional confirming medical records *Id.* at 5-6.

In response to the Court's Show Cause Order [R. 574], the United States filed a Sur-Reply to Defendant's Motion for Compassionate Release [R. 576] The United States argues that although § 1B1.13 is no longer controlling post-*Jones*, it remains a good guide for courts to consider in determining what are extraordinary and compelling reasons for release. *Id.* at 6. For

---

[4] This Court, upon motion by Defendant, entered an order recommending to the BOP that Ms. Thompson be allowed to attend her daughter's funeral. [R. 560] Apparently she was not released for the funeral. [R. 569]

"family circumstances" to qualify as "extraordinary and compelling reasons" the commentary to § 1B1.13, includes "the death or incapacitation of the caregiver of the defendant's minor child or minor children." § 1B1.13, Application Note 1 (C)(i). The United States recognized that various courts have granted compassionate release based on "extraordinary and compelling reasons" stemming from family circumstances. *Id.* at 6-7. The government acknowledged that Ms. Thompson's family circumstances are tragic and "possibly an appropriate basis for compassionate release." *Id.* at 6-7. The government argued, however, that Defendant has not met her burden of demonstrating extraordinary circumstances warranting release because she had not yet provided the Court with the specific information requested – relevant medical records of Defendant's mother and/or children in support of her Motion. *Id.* at 7. The United States therefore argued Defendant had failed to demonstrate her mother is incapacitated and unable to care for Defendant's children. *Id.*

As mentioned, since the United States filed its sur-reply, Defendant advised the Court that her husband, Lowell Washington, died tragically, and she submitted correspondence from her children regarding their struggles after losing both a sibling and step-father while their mother is incarcerated. [R. 582; R. 583; R. 584-1 (Emergency Message to Inmate)] She supplemented her Motion further advising the Court that her Pre-Sentence Report was incorrect where it stated that Mr. Washington was her ex-husband, but rather the two had been together for 10 years (and married for almost 5 years). [R. 584] Defendant recounts the additional hardship and grief Mr. Washington's death has had on her children and herself. *Id.* at pp. 3-4. Finally, on April 23, 2021, Defendant filed an additional supplement advising the Court that her mother had recently been "very sick, [] was admitted to the hospital on 4/18/21 [with] conditions [of] 'heart failure,' fluid in her lungs, along with many other health conditions." [R. 586, p. 1] She again

advised that her mother is the primary caregiver for her remaining two children and grandchild, and that her 79-year-old father cannot care for the children. *Id.* at 2. She explained there is no one else in her family to care for her children. Defendant acknowledged the bad decisions she made and requested a second chance so she can return to her family and care for them. *Id.* at 3-4. She attached e-mail correspondence from other family members confirming her mother's hospital stay and health problems. [R. 586-1]

Finally, on May 14, 2021, Defendant filed sealed medical records related to her mother, Patricia Thompson, [R. 590-1], which reflect a week-long hospital stay in April 2021 for "acute systolic heart failure," along with other verified health issues. The records also outline a complicated drug regimen to treat Patricia Thompson's numerous health conditions. *Id.* Thereafter, the Court ordered the United States to file a response to the elder Thompson's sealed medical records. [R. 592] The United States' response acknowledged that courts may grant compassionate release based on family circumstances, acknowledged that Patricia Thompson's medical records may support a finding of extraordinary and compelling reasons for release, but ultimately took no position on the matter, deferring to the Court's discretion. [R. 594, p. 4]

Given the now-developed record in this case and supporting medical documentation, the Court finds extraordinary and compelling reasons for Defendant's release based on family circumstances. Patricia Thompson's letter to the Court and her medical records confirm she is gravely ill and left with the responsibility of caring for Defendant's minor children and grandchild, most of whom have unique medical and developmental issues of their own. The Court is also satisfied that there is no other caregiver to provide for Defendant's children.  Her father is in his late 70s, and no one emerges from Defendant's Pre-Sentence Report (PSR) as a candidate. [R. 388] In addition, the tragic deaths this family has faced no doubt have exacerbated

Patricia Thompson's health problems and compounded the hardships that Defendant visited on her young family because of her own poor choices. *See Griffin*, 2020 WL 7295765 (granting compassionate release where defendant was the only available caregiver for ailing family member); *Quinones Rodriguez*, 2020 WL 5045203 (granting release after the incapacitation of minor children's caregiver, where children were placed in foster care); *Hansen*, 2020 WL 2219068 (granting release where defendant's wife suffered from serious liver disease); *Walker*, 2019 WL 5268752 (granting release so defendant could care for ailing mother).

Ms. Thompson meets the first prong of the *Jones* test (she has demonstrated extraordinary and compelling reasons for release), and the Court will turn to the statutory factors under § 3553(a).

### B. Balancing Under § 3553(a)

Even though Ms. Thompson's family circumstances satisfy step one of the *Jones* inquiry as extraordinary and compelling, release is warranted only if it is consistent with the sentencing factors set out in 18 U.S.C. § 3553(a), which include in part: the nature and circumstances of the offense; the Defendant's history and characteristics; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public from further crimes, and avoid unwarranted sentencing disparities. § 3553(a)(1)–(7); *see also Jones*, 980 F.3d at 1112–16 (discussing the district court's obligation to weigh the § 3553(a) factors and to provide specific factual reasons for its decision that furnish a thorough factual record for review). This Court need not "specifically articulat[e]" every single § 3553(a) factor as part of its analysis. *Jones*, 980 F.3d at 1114. Rather, the record "as a whole" (the original sentencing proceeding and the modification proceeding) must confirm the district court considered the "pertinent" factors. *Id.* at 1115. This Court has thoroughly reviewed the

sentencing proceedings in this case, along with the parties' arguments and submissions related to the current Motion and is comfortable that release is warranted under the statutory factors.

Ms. Thompson, proceeding *pro se*, addresses a number of the § 3553(a) factors, and the Court has the benefit of the sentencing proceedings and pleadings in this case, the PSR, and the arguments of the United States in this regard. Defendant further submits letters from other inmates in support of her Motion. [R. 584-2; R. 584-3; R. 585] She also outlines her efforts to rehabilitate herself, including multiple classes such as "Enhancing Your Vocabulary," [R. 533-1], "Drug Education Course" [R. 570-1]; GED classes [R. 570-2]; "Creative Writing Poetry" class and "Women's Relationships" class [R. 580]. Defendant recounts she has "learned a valuable lesson," and she advises she has consistently worked in the kitchen preparing food for the other inmates. [R. 580]

First, the "nature and circumstances of the offense and the history and characteristics of the defendant," do not preclude release. Ms. Thompson was indicted as part of a large, multi-defendant drug conspiracy involving significant amounts of methamphetamine. The circumstances of the crime are outlined in the Court's previous Order [R. 506], but suffice it to say that she was observed, along with two co-defendants, on December 6, 2017, at the Cincinnati/Northern Kentucky airport (where an expected drug shipment was to arrive) in possession of $5,000 (enough cash to purchase one pound of methamphetamine). The government dismissed the drug charge against Defendant, and she ultimately pleaded guilty to misprision of a felony.  This Court observed that her criminal history (a Category III) was somewhat understated given that 10 criminal history points were not even counted due to a cap of 4 points for certain offenses. Nevertheless, the Court notes that none of Defendant's previous crimes involved violence, and this matter was the first drug trafficking charge against her (and

charge was ultimately dismissed when she pleaded guilty to misprision of a felony). The Court has little concern that Defendant presents a risk of danger to the public going forward and will address any slight risk with special conditions during her special term of supervised release as outlined below. Further, Ms. Thompson has a supportive home to return to and several family members in and around Louisville, Kentucky, and the Court finds she has a solid landing for re-entry.

The Court nevertheless has some concerns based on Defendant's previous conduct in this case. Her conduct while on release for this offense was not without blemish. She had two runs-ins with law enforcement while on release and failed to inform her probation officer of either one. [R. 451, pp. 2-3] One offense involved a state drug possession charge. While the Court is concerned about Defendant's prior compliance and her lack of responsiveness to her probation officer in the past, those concerns are eased by Defendant's more recent supplemental filings that she understands the gravity of her circumstances and is committed to changing her behavior and attitude in a positive and compliant manner. The Court has also fashioned conditions of release to address any lingering concerns with Defendant's compliance.

The Court's imposition of a special condition of Location Monitoring (and curfew) during the special term of supervised release as outlined below will address the need to protect the public and will ensure adequate deterrence. Upon release as ordered below, Ms. Thompson will have served nearly 70% of her sentence (including credit for good time) and is currently only 5 months from her BOP home incarceration date. Further, she has served much of her time under challenging conditions due to COVID-19. Ms. Thompson will serve the remainder of her sentence under strict conditions of the Location Monitoring Program – a form of intensive

monitoring by the Probation Office. Ms. Thompson is expected to be responsive and compliant in every way.

This Court does not have the statutory authority to modify a defendant's current sentence to home confinement. *See United States v. Townsend*, 631 F. App'x 373, 378 (6th Cir. 2015) (explaining that the authority to determine the place of a prisoner's confinement is delegated solely to the Bureau of Prisons); *United States v. Jalili*, 925 F.2d 889, 894 (6th Cir. 1991) (same); *United States v. Coates*, No. 13-cr-20303, 2020 WL 7640058, at *11 (E.D. Mich. Dec. 23, 2020). However, courts may reduce a defendant's current sentence to time served and impose a new term of supervised release and/or home confinement. *See United States v. Amarrah*, 458 F. Supp. 3d 611, 620 (E.D. Mich. 2020) (reducing sentence to time served and imposing a new term of supervised release, with the first 12 months of the release to be served in home confinement); *United States v. Anderson*, No. 3:98-CR-00038, 2020 WL 6119923, at *7 (M.D. Tenn. Oct. 16, 2020) (same, with a special term of six months of home confinement); *United States v. Brownlee*, No. 14-20562, 2020 WL 6118549, at *6 (E.D. Mich. Oct. 16, 2020) (same, with a special term of 18 months of home confinement). This Court will therefore follow suit and reduce Ms. Thompson's sentence to time served and impose a special term of supervised release with a special condition of Location Monitoring until March 2, 2022 (and curfew as outlined herein), to be followed by one year of her previously-ordered supervised release.

The special condition of Location Monitoring (and curfew), coupled with the sentence already served under challenging conditions, will honor the § 3553(a) factors. Likewise, the Court has considered additional § 3553(a) factors, including the kinds of sentences available, any applicable policy statements, the need to avoid *unwarranted* sentencing disparities, and the need to provide restitution. *See* § 3553(a). None of these factors precludes release. After weighing all

- 13 -

the § 3553(a) factors and given the unique and tragic circumstances of this case, release is warranted.

Ms. Thompson alone is responsible for the position she has placed herself in, and more importantly, the hardship she has inflicted on her mother, children and grandchild.  Ms. Thompson is being given a unique opportunity for early release due to the significant hardships faced by her mother and young family. The purpose of this release is so that she can do the hard, selfless job of parenting her children and grandchild and caring for an ailing family member. For these reasons, this Court will exercise its considerable discretion and grant release under the conditions outlined below.

Accordingly, the Court being sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1.      Defendant's Motion for Compassionate Release [**R. 523**] is **GRANTED but only on the grounds related to family circumstances**.

2.      Defendant's Motion to Appoint Counsel **[R. 525]** is **DENIED as moot.**

3.      Defendant Tonika Thompson's sentence of incarceration is hereby **REDUCED to TIME SERVED effective Wednesday, June 16, 2021 at 2:00 PM (EDT).**

4.      The Bureau of Prisons shall release Defendant on **Wednesday, June 16, 2021 at 2:00 PM (EDT), or as close as possible to that time.**

5.      The Court will impose a **special term** of supervised release under 18 U.S.C. § 3582(c)(1) that will begin immediately upon Defendant's release from custody. The defendant shall be placed in the location monitoring program utilizing technology at the discretion of the probation office and shall abide by all technology requirements. The defendant shall be restricted to her residence every day from 7:00 PM to 7:00 AM (curfew).  The defendant shall follow all

program rules. The defendant shall contribute to the Probation Office's cost of services rendered based upon her ability to pay as reflected in her monthly cash flow as it relates to the court-approved sliding fee scale.  The defendant shall participate in the location monitoring program at the address identified as her parent's home in her Pre-Sentence Report until **March 2, 2022**, at which time the special term of supervised release will expire.  Additionally, the Court will impose the special conditions originally ordered at the time of sentencing during the special term of supervised release.   The defendant shall immediately report to the U.S. Probation Office upon her release from the Bureau of Prisons for orientation to the special term of supervised release.

6.      Upon returning to her parent's home, Ms. Thompson **shall self-quarantine at her parent's residence for fourteen (14) days, except for necessary medical treatment and upon prior notice and approval by U.S. Probation (except in the case of a true medical emergency, in which case prior approval is not necessary)**.

7.      Upon expiration of the special term of supervised release, Defendant shall begin serving the one-year term of supervised release that the Court imposed in the Judgment. To be clear, this one-year term of supervised release (with the originally-imposed special conditions) is to run entirely consecutively to the special term of supervised release discussed above. The Court will enter an amended judgment and commitment.

This the 14th day of June, 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc:     Counsel
        U.S. Probation Office, Western District of Kentucky
        U.S. Marshal
        Bureau of Prisons